IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA A. COX, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:07-CV-057-BF (R) |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. Patricia A. Cox ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") payments under Title XVI of the Act. The Court considered "Plaintiff's Brief on Appeal," filed August 10, 2007, "Defendant's Brief," filed October 2, 2007, and "Plaintiff's Reply Brief," filed November 1, 2007. For the reasons stated below, the final decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born on April 9, 1955. (Tr. 283.) She applied for DIB on April 8, 2003, alleging disability since September 29, 1999, due to major depression, a personality disorder, back problems, vision problems, a chemical imbalance, and hepatitis C. (Tr. 71-74, 85, 278-82.) Plaintiff contended that she had difficulty standing and walking because of peripheral vascular disease in her lower extremities, that she had difficulty in maintaining concentration, persistence, or pace, and social functioning, and that she suffered from major depression and hepatitis C. (Tr. 22-23, 123.)

1

Plaintiff was 48 years old when she applied for benefits and 49 years old on the date of the hearing. (Tr. 21, 34.) Plaintiff has a seventh grade education and has performed past relevant work as a nurse's aid, a housekeeper and a doughnut machine operator. (*Id.*)

Following a *de novo* hearing on January 20, 2005, the Administrative Law Judge, Kim D. Parrish (the "ALJ"), denied Plaintiff's claim. (Tr. 58-59.) The ALJ concluded that Plaintiff is unable to perform her past relevant work. (Tr. 28, Finding No. 7.) He also found, however, that Plaintiff has the residual functional capacity ("RFC") to perform light work activity, diminished by significant nonexertional limitations and limited to occupations that performed routine, repetitive, low-stress work. (Tr. 28, Finding No. 6.) The ALJ found that despite the fact that Plaintiff's exertional and nonexertional limitations did not allow her to perform the full range of light work, there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 28, Finding No. 12.) The Appeals Council denied Plaintiff's request for review and the ALJ's findings became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to determining whether the decision is supported by substantial evidence, and whether the proper legal standards were applied to evaluate the evidence. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)

(footnotes omitted).

The court may not "reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. Substantial evidence is that which a reasonable mind might accept to support a conclusion. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). It is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). In order to make a finding of no substantial evidence, the court must determine that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the Court determines that the evidence preponderates in Plaintiff's favor, the Court must still affirm the Commissioner's finding if there is substantial evidence to support those findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner and not this Court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *See Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether: (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a mental or physical impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520 (4)(a)(i)-

(v). The claimant bears the initial burden of proving he or she is disabled under the first four steps. *See Leggett*, 67 F.3d at 564. If at any point during the examination of the first four steps the Commissioner determines the claimant is or is not disabled, the inquiry terminates. *See id.* If the claimant meets his or her burden, the Commissioner then bears the burden at step five to show the claimant is capable of performing other gainful employment available in the national economy. *See Greenspan*, 38 F.3d at 236. The Commissioner may satisfy this burden by referencing the Medical-Vocational Guidelines of the regulations or by expert vocational expert testimony or other similar evidence. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

For purposes of social security cases, "disability" means an inability to engage in substantial gainful activity because of a medically determinable mental or physical impairment or combination of impairments that could be expected to either last for a continuous period of not less than 12 months or to result in death. *See* 42 U.S.C. § 423(d)(1)(A). In order to establish disability, the record must show that the limitations imposed by Plaintiff's conditions prevent her from engaging in any substantial gainful activity. *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

When reviewing a decision of "not disabled," the Court's function is to determine whether the record as a whole contains substantial evidence that supports the final decision of the Commissioner, as the trier of fact. *See Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). Four elements of proof should be weighed to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of examining and treating physicians; (3) Plaintiff's subjective evidence of pain and disability; and (4) age, education, and work history. *See*

*Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). The ALJ must develop the facts fully and fairly relating to an applicant's claim for disability benefits. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If the ALJ fails to do this, the decision is not substantially justified. *Id*. Nevertheless, the ALJ's decision should be reversed only if Plaintiff shows that he or she was prejudiced. *Id*. A procedurally imperfect administrative ruling should not be overturned unless the substantive rights of a party have been prejudiced. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997).

## ANALYSIS

Plaintiff contends that the Commissioner's decision was not supported by substantial evidence and that the proper legal standards were not applied. (Pl.'s Br. at 4.) Plaintiff objects to the Commissioner's decision on five grounds. Plaintiff contends that: (1) the ALJ improperly evaluated her residual functional capacity ("RFC"); (2) the ALJ improperly disregarded the treating physician's opinion; (3) the ALJ failed to evaluate the effects of Plaintiff's hepatitis C; (4) the ALJ failed to develop the evidence regarding Plaintiff's impaired lower extremities and erroneously found that Plaintiff could stand and walk for six hours a day; and (5) the ALJ improperly concluded Plaintiff could perform a significant number of jobs in the national economy. (Pl.'s Br. at 12, 15, 21, 23, 26).

### Residual Functional Capacity

Plaintiff alleges that the decision of the ALJ must be reversed because he did not adequately explain the evidence pertaining to Plaintiff's social functioning in his findings and because the vocational expert ("VE") found that someone with impaired social functioning, like Plaintiff, could not perform light work. (Pl.'s Br. at 12, 15.)

5

Social functioning refers "to [a claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(2). In assessing Plaintiff's RFC, the ALJ should consider, among other things, Plaintiff's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimants mental disorder. *Id.* at 12.00(C). Contrary to Plaintiff's assertion, the ALJ's RFC finding does not reflect "zero social-functioning limitation."

Substantial evidence supports the ALJ's RFC finding pertaining to Plaintiff's social functioning. (Pl.'s Br. at 13.) The ALJ specifically evaluated Plaintiff's mental impairments and difficulties in maintaining social functioning and found that Plaintiff was moderately restricted in her social functioning. (Tr. 22.) The ALJ noted that Plaintiff had been observed as being very talkative when she was employed at the grocery store, and when she was at the doctor's office. (*Id.*) Plaintiff also indicated that she attended church and held prayer meetings in her home on a weekly basis. (Tr. 108, 154.) Plaintiff took care of her disabled husband, terminally ill mother and two grandchildren. (Tr. 104, 107, 258.) The ALJ concluded that Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 28, Finding No. 4.) The ALJ properly explained his social functioning determination and was not required to expressly include all the evidence he took into account when assessing Plaintiff's social functioning. *See Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005) ("[T]here is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings.").

Plaintiff next alleges that reversal and rendition is justified because the ALJ found that Plaintiff had the RFC to perform work even though the vocational testimony established that someone with impaired social functioning could not perform work. (Pl.'s Br. at 14-15.) Plaintiff supports this allegation by referring to the two hypothetical questions presented by the ALJ to the VE. (*Id.*) The ALJ first asked the VE to consider whether an individual with Plaintiff's RFC and age could perform light work activity. (Tr. 320.) The ALJ brought to the VE's attention Plaintiff's repetitive-motion limitations and the ALJ confined the inquiry to low stress work. (*Id.*) The VE responded by stating that such an individual could perform the jobs of maid/housekeeper, vegetable sorter and hand trimmer. (*Id.*) The ALJ next inquired whether an individual with the same vocational factors who possessed "a 20 percent reduction in concentration capability, along with the diminished ability to relate appropriately with peers and coworkers," could perform any work. (Tr. 321.) The VE testified that there was no work for such an individual. (*Id.*)

Plaintiff maintains that the ALJ's finding that she could perform light work is inconsistent with the testimony by the VE that an individual with functional limitations, like Plaintiff, could not perform the identified vocations because of social functioning limitations. (Pl.'s Br. at 15.) However, Plaintiff has not explained how these jobs exceed her functional capacity as determined by the ALJ. *See Selders*, 914 F.2d at 618 (requiring claimant to show inability to perform jobs once it is demonstrated that jobs are available to a claimant). Further, the VE responded with three unskilled, light jobs that do not require any interaction with people or the public other than attending to work assignment instructions or orders of a supervisor. (Tr. 320.) *See* U.S. DEPARTMENT OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES (DOT) (4th ed. rev. 1991), 323.6870-014 (maid), 529.687-186 (vegetable sorter), and 781.687-070 (hand trimmer). Substantial evidence exists to

7

show that Plaintiff could perform these jobs.[1]  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."  *See Morris*, 864 F.2d at 335 (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).  Because the ALJ's determinations are consistent with the record and supported by substantial evidence, any improprieties could not have prejudiced Plaintiff's substantive rights.  *See Morris*, 864 F.2d at 336.  The Commissioner showed that jobs exist in the national economy that Plaintiff could perform despite her social functioning limitations.

### **Treating Physician**

Plaintiff next alleges that the ALJ committed reversible error by refusing to afford controlling weight to the medical opinions of her treating psychiatrist, Art Smith, M.D., ("Dr. Smith") and thus made medical inferences that were not warranted by clinical findings.  (Pl.'s Br. at 16-18.)

The ALJ will give the treating physician's opinion controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  *See Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)).  "The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."  *See Newton v. Apfel*, 209

---

[1] Medical evaluations of Plaintiff indicate that she could perform jobs that did not require much interaction with people.  (Tr. 153-56.)  Bobbie Hart Lily, Ph.D., performed a psychological examination and observed that Plaintiff was friendly and easily maintained a rapport with him.  (Tr. 155.)  Mark Mankins, M.D., also examined Plaintiff on October 2004 and observed that she was "talkative as usual."  (Tr. 277.)  State agency physician Henry M. Hanna, Ph.D., reviewed the medical evidence and opined that Plaintiff was not significantly limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-worker or peers without disrespecting them, and to maintain socially appropriate behavior.  (Tr. 159.)

F.3d 448, 455 (5th Cir. 2000). However, the treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). When an ALJ disregards a treating physician's opinion regarding the "nature and severity of a patient's impairment," the ALJ must "give good reasons in [his] notice of determination or decision for the weight [given to the] treating source's opinion." *See* 20 C.F.R. § 416.927(d)(2). Good cause may permit an ALJ to discount the treating physician's opinion where it is unsupported by acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown*, 192 F.3d at 500 (affirming lower court's disregard of treating physician's opinion when every other doctor plaintiff consulted and objective medical tests indicated the opposite of treating physician's opinion); *Greenspan*, 38 F.3d at 237 (affirming rejection of a treating physician's conclusions when the treating physician's diagnoses were dubious and inherently contradicting, and were contradicted by substantial medical evidence). The ALJ may not summarily reject the treating physician's opinion based only on the testimony of a medical expert who has not examined the client. *See Newton*, 209 F.3d at 458.

The ALJ discussed the history of Plaintiff's medical treatment in his opinion. (Tr. 25-26.) In brief, Plaintiff sought medical treatment and completed a functional limitation assessment at the Helen Farabee Regional MHMR Center ("MHMR") on December 1, 2003. (Tr. 25.) Dr. Smith was the head psychiatrist who oversaw Plaintiff's mental-health care at MHMR. (Tr. 254-65.) He diagnosed Plaintiff with major depression and personality disorder and opined that Plaintiff experienced "marked restrictions," of daily living and in maintaining social functioning. (Tr. 254, 259.) In his decision, the ALJ carefully considered the various opinions of Dr. Smith; concluding that the inconsistent nature of the opinions, weighed against progress notes of the treating physicians

9

at MHMR close to the same period of time, rendered Dr. Smith's opinion of little value. Although the ALJ did not perform a detailed analysis based on 20 C.F.R. § 404.1527(d) the ALJ does not have to perform the analysis where there is "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Newton*, 209 F.3d at 453. The ALJ expressly noted that he gave "due consideration" to Plaintiff's treating psychiatrist and demonstrated good cause for giving "little weight to the opinions and findings of the members of [Plaintiff's] management team where they are not supported by the signs, symptoms, and medical findings in the record. (Tr. 26.) Specifically, the ALJ noted inconsistencies within the medical notes from Plaintiff's treating physicians at MHMR. (Tr. 22, 25.) *See Newton*, 209 F.3d at 455-56 ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). *See also Greenspan*, 38 F.3d at 237. Dr. Smith's own examination notes, taken before December 2003 and after, did not support his rather restrictive assessment of Plaintiff's limitations. (Tr. 251, 263, 265.) The ALJ has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See* 20 C.F.R. §§ 404.1527(d)(2). Moreover, "[t]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. The ALJ's assessment of Dr. Smith's opinion is supported by substantial evidence and is not the result of legal error.

### Plaintiff's Hepatitis C

Plaintiff alleges the ALJ failed to evaluate Plaintiff's hepatitis C, a known impairment, thereby committing reversible error. (Pl.'s Br. at 21-22.) Plaintiff was not represented by counsel, but rather by a benefits counselor at MHMR. (Tr. 306.)

The ALJ's "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedures appears before him." *See Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (internal citations omitted). This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *See Kane*, 731 F.2d at 1220-21(remanding for further proceedings when claimant's hearing was only five minutes long and the ALJ asked only a single question). However, the ALJ's failure to develop an adequate record is not grounds for reversal per se. *Id.* at 1220. The plaintiff must "show that she was prejudiced as a result of a scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Id.*

The mere presence of an impairment is not enough to establish that one is suffering from a disability. *See Miriam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986). Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Id.* A claimant has the burden to prove that she is unable to engage in any substantial gainful activity because of a physical impairment, and Plaintiff must establish that the physical impairment lasted at least twelve months. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).

There was no evidence that Plaintiff's hepatitis C was active during the relevant time period. While several doctors noted that Plaintiff had a history of hepatitis C, none of the doctors actually diagnosed her with an active form of the disease. (Tr. 128, 149, 168, 235, 246-47.) The record does not indicate that Plaintiff received treatment for hepatitis C during the relevant time period. (Tr. 139.) *See Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990) (finding lack of treatment to be an indication of non-disability). Even if Plaintiff could demonstrate that she suffered from an active case of hepatitis C during the relevant period, Plaintiff has failed to point to any evidence

11

demonstrating that her hepatitis C resulted in functional limitations that would preclude her from working. *See* 20 C.F.R. § 404.1512(a); *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the Secretary does not have the burden of making an initial showing of nondisability).[2] Plaintiff has not shown that she would have been found disabled if the ALJ evaluated the effects of her hepatitis C. *See Kane*, 731 F.2d at 1220. Therefore, although the ALJ did not explicitly evaluate Plaintiff's hepatitis C, the ALJ's failure to do so did not result in prejudicial error.

### **Plaintiff's Lower Extremity Impairments**

Plaintiff next argues that the ALJ's determination that Plaintiff could stand and walk for up to six hours every work day is not supported by substantial evidence because the ALJ disregarded evidence establishing Plaintiff's severe impairments and failed to properly develop the evidence regarding Plaintiff's lower extremities.

The ALJ did not improperly dismiss evidence establishing Plaintiff's severe impairments. (Tr. 22.) Indeed, the ALJ determined that one of Plaintiff's severe impairments was astherosclerotic vascular disease. (Tr. 22.) The ALJ extensively discussed Plaintiff's leg problems throughout the decision. (Tr. 23-24.) Further, Plaintiff's MHMR social worker's opinion that Plaintiff meets the listing 4.10 for aneurysm of aorta with nerve damage, a decision reserved to the ALJ, is not entitled to any special significance under the regulations. *See* 20 C.F.R. § 404.1527(e)(1) and (2). *See also Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) ("The ALJ has the sole responsibility for determining the claimant's disability status."). *See also* 20 C.F.R. § 416.913(a) (social worker is

---

[2]Notably, Plaintiff only cites to two decisions from the Tenth Circuit stating that "[t]he ALJ's failure to evaluate a known impairment is, by itself, grounds for reversal." (Pl.'s Br. at 22.) Although Plaintiff was not represented by counsel, Plaintiff overstates the ALJ's duty to evaluate a known impairment when alleging that the ALJ should have obtained Plaintiff a liver specialist for a consultative examination. (Pl.'s Br. at 23.)

not listed as an acceptable medical source). A claimant meets Listing 4.10 when she has an "aneurysm of aorta of major branches, due to any cause" if the aneurysm is "determined by an appropriate image technique" with "acute or chronic dissection not controlled by prescribed medical or surgical treatment." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 41.0. There is no evidence in the record showing that Plaintiff was diagnosed with an aneurysm. Plaintiff "must provide medical findings that support each of the criteria for the equivalent impairment determination." *See Selders*, 914 F.2d at 619. Plaintiff fails to establish that her impairment meets all of the specified criteria required in Listing 4.10, and thus fails to prove that her condition meets a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

The ALJ properly found that Plaintiff's subjective complaints regarding her ability to stand and walk were not substantiated by the medical evidence to be of such intensity, frequency and duration as to prevent the performance of a wide range of light work. (Tr. 24.) Plaintiff testified that she was limited in standing, sitting and walking due to severe leg spasms. (Tr. 317.) Plaintiff contends that the ALJ could not properly consider her failure to obtain regular treatment as grounds for finding her complaints incredible because her failure to receive treatment was prompted by her indigence. (Pl.'s Br. at 25.) *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). However, there is no evidence, besides Plaintiff's testimony, that she would be disabled with or without regular medical treatment. *See Villa*, 895 F.2d at 1024. Accordingly, the ALJ was not precluded from relying upon the lack of treatment as an indication of nondisability. *Id.*

The ALJ noted that x-rays of Plaintiff's lumbar spine showed only minor degenerative changes. (Tr. 24, 85, 145.) The ALJ further found that no showing of nerve root compression or

radiculopathies requiring invasive treatment was made. (Tr. 24.) While Plaintiff was diagnosed with "severe peripheral vascular disease with occluded distal aorta" and an "aorta-bifemoral bypass with graft" was performed in 2004, Plaintiff has since shown "excellent dorsalis pedis pulses." (Tr. 24, 246, 277.) The ALJ noted that medical examinations further revealed Plaintiff "had good pulses in her femoral arteries and the dorsalis pedis arteris bilaterally." (*Id.*) "Subjective evidence need not take precedence over objective evidence." *See Villa,* 895 F.2d at 1024. "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Id.* The ALJ pointed to the conflict between Plaintiff's descriptions of her physical symptoms and the descriptions contained in her medical records. (Tr. 24.) Substantial evidence supports the ALJ's finding, and the decision should not be overturned on this basis.

## **Significant Number of Jobs Exist in the National Economy**

Plaintiff finally argues that the ALJ ignored Plaintiff's restricted ability to drive and get to work and thus erroneously found that a significant number of jobs existed in the national economy that she could perform. (Pl.'s Br. at 26.) Congress restricted the expansive reading of "disability" with the Social Security Amendments of 1967, "eliminating consideration of travel difficulties when those difficulties were extrinsic to the claimed disability; the length and expense of commuting and the resulting inconveniences were no longer to influence a disability determination." *Lopez Diaz v. Sec'y of Health, Educ. & Welf.*, 585 F.2d 1137, 1140 (1st Cir. 1978). *See* Sen. Rep. No. 744, 90th Cong., 1st Sess. (1967), reprinted in 1967 U.S. Code Cong. & Admin. News, pp. 2934, 2881. "It is, and has been, the intent of the statute to provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular

individual may reside, to local hiring practices or employer preferences, or to the state of the local or national economy." *Id.* at 2882. However, when "the claimant asserts that his locomotive disabilities render it impossible, or extremely difficult, for him to physically move his body from home to work, the claim . . . is no longer extrinsic to his disabilities . . . ." *Lopez Diaz,* 585 F.2d at 1140.[3]

Plaintiff failed to show how her locomotive disabilities render it impossible or extremely difficult to travel to work. While Plaintiff testified that she did not drive, Plaintiff acknowledged that she had a scooter or usually walked. (Tr. 313-14.) Besides Plaintiff's personal allegation that she could not drive safely because of her anxiety level and poor concentration, no medical evidence in the record establishes Plaintiff's disabilities as being the cause behind Plaintiff's extreme difficulty or impossibility to travel to work. (Tr. 257.) Dr. Smith, Plaintiff's treating psychiatrist, concluded that Plaintiff could not drive because she could not afford a vehicle, and instead relied on others to meet her transportation needs because public transportation was not available in her residential area. (Tr. 257.) Although evidence was presented that indicated Plaintiff may have extreme difficulty traveling to work, Plaintiff's traveling difficulties were not due to her impairments but due to extrinsic factors and thus are not directly relevant to Plaintiff's disability claim. *See e.g., Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999) (plaintiff's extrinsic travel factor, the long distance she must travel, could not enter into a finding of disability).

---

[3] *See, e.g., Rivera v. Sullivan*, 771 F. Supp. 1339, 1356 (2nd Cir. 1991) (finding plaintiff could not perform prior job when testimony of plaintiff and her daughter and reports of treating physicians indicated plaintiff could not use public transportation and no record evidence showed plaintiff could travel to her prior job other than by public transportation); *Leslie v. Schweiker*, 589 F. Supp. 41, 46 (E.D. Pa. 1983) (holding ALJ's ignorance of evidence regarding claimant's dizziness and faulty vision making driving or taking public transportation to work impossible was reversible error).

The relevant consideration is whether work exists in significant numbers in the *national* economy. *See* 20 C.F.R. § 404.1566(b). *See also* 42 U.S.C.S. § 423(d)(2) ("An individual shall be determined to be under disability only if . . . [she can] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives"). Further, the ALJ's hypothetical question to the VE included all of Plaintiff's limitations supported by the record and the VE testified that of the total number of jobs Plaintiff could perform, thousands of those jobs were available in Texas. (Tr. 320.) *See Morris*, 864 F.2d at 335-36 (holding that the VE's testimony is substantial evidence of a significant number of jobs the claimant can perform when the ALJ's hypothetical question includes all of the limitations supported by the record). Plaintiff does not challenge the VE's testimony or the hypothetical posed to the VE, and the ALJ did not err in relying on the VE's testimony. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1995). Substantial evidence supports the ALJ's finding that a significant number of jobs exists to which Plaintiff has access. The ALJ's failure to discuss Plaintiff's travel difficulties did not render his conclusion erroneous.

## CONCLUSION

The Commissioner's decision is not the result of prejudicial legal error, and substantial evidence supports the decision. Accordingly, the Commissioner's decision is affirmed.

**It Is So Ordered**, September 8, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE